**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHARIE LYNN KENNEY,

        Plaintiff,

v.                                         CIV 17-0104 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social
Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for a Rehearing, with Supporting Memorandum (*Doc. 20*), filed on August 24, 2017. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering a final judgment. *See Docs. 4*, *8*, *9.* Having considered the record, submissions of counsel, and the relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

## I.    Procedural History

Ms. Charie Lynn Kenney ("Plaintiff") filed an application for Supplemental Security Income ("SSI") with the Social Security Administration on October 18, 2012. Administrative Record[2] ("AR") at 170, 316-27. She alleged a disability onset date of June 1, 2009 (AR at 170, 228-29); however, the Social Security Administration will pay

---

[1] Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P 25(d), Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] Document 15-1 contains the sealed Administrative Record. *See Doc. 15-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

SSI benefits, at the earliest, the month after the month the application was filed, or November 2012. *See* 20 C.F.R. § 416.335. Disability Determination Services ("DDS") found Plaintiff was not disabled on its initial review (AR at 227-39), and upon reconsideration (AR at 240-54). Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") John Rolph on May 19, 2015. AR at 282-86. Following the *de novo* hearing (AR at 191-226), ALJ Rolph issued an unfavorable decision on July 27, 2015 (AR at 170-83). The Appeals Council denied Plaintiff's subsequent request for review (AR at 1-4), making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then filed suit in this Court. *Doc. 1.*

## II.     Applicable Law and the ALJ's Findings

An applicant seeking disability benefits must establish that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner determines eligibility for benefits through a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At the first four steps, the applicant must show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the

applicant's residual functional capacity ("RFC"), she is unable to perform her past relevant work. 20 C.F.R § 416.920(a)(4)(i)-(iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [an applicant] retain[s] in spite of [her] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the applicant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at the final step to show that the [applicant] retains sufficient RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the sequential evaluation process, ALJ Rolph found that Plaintiff "has not engaged in substantial gainful activity since October 18, 2012, the application date." AR at 172 (citing 20 C.F.R. §§ 416.971-976). At Step Two, the ALJ concluded that Plaintiff's severe impairments are "degenerative disc disease (bqck [sic] and neck problems) with peripheral neuropathy, chronic obstructive pulmonary disease (COPD)/ asthma, post-traumatic stress disorder (PTSD), depressive disorder, anxiety disorder, and pain disorder with psychological factors." AR at 172 (citing 20 C.F.R. § 416.920(c)).

At Step Three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." AR at 173 (citing 20 C.F.R §§ 416.920(d), 416.925, 416.926). In making this determination, the ALJ

considered listings 1.04 (Disorders of the Spine), 3.02 (Chronic Pulmonary Insufficiency), and 12.04 and 12.06 (mental impairments). AR at 173-74.

ALJ Rolph next defined Plaintiff's RFC, and in doing so "considered all [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR at 175 (citing 20 C.F.R. § 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996)). The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 176. The ALJ considered the evidence of record, including Plaintiff's physical impairment medical records from October 2012 to June 2015, Plaintiff's mental impairment medical records from September 2012 to February 2015, records from consultative examinations with John Owen, Ph.D., Myron Watkins, M.D., Karine Lancaster, M.D., Elizabeth Chiang, M.D., and Julian Lev, Ph.D., medical source statements from treating provider Kathryn Fraser, M.D., Plaintiff's global assessment of functioning scores, a function report from Plaintiff's mother, and Plaintiff's testimony. AR at 176- 81. Ultimately, the ALJ determined that Plaintiff's RFC includes that Plaintiff can

> lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently in light work as defined in 20 C.F.R [§] 416.967(b). She is able to stand, walk and sit for six hours each in an eight-hour day, for 45 to 60 minutes at one time. She can occasionally reach overhead with the bilateral upper extremities, and can frequently engage in gross and fine manipulation with the same. She may occasionally climb ramps and stairs, balance, stop, kneel, crouch and crawl but never climb ladders, ropes or scaffolds. She may frequently engage in activities requiring flexion and extension of the neck. She must avoid more than occasional contact with extreme cold, vibration and irritants such as fumes, odors, dust, gases, chemicals and

poorly ventilated spaces. She must avoid all exposure to hazards such as dangerous machinery and unsecured heights. She is fully capable of learning, remembering and performing simple, routine and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable and low stress environment, defined as one in which there is regular pace, few work place changes and no "over the shoulder" supervision. She can attend and concentrate for two hours at a time with normal breaks. She may have occasional and superficial contact with supervisors and coworkers, but she should only have minimal contact with the public.

AR at 175.

At Step Four of the sequential evaluation process, the ALJ noted that Plaintiff "has no past relevant work." AR at 181 (citing 20 C.F.R. § 416.965). Finally, at Step Five, the ALJ determined that, "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." AR at 182 (citing 20 C.F.R. §§ 416.969, 416.969(a)). The ALJ made this determination based on testimony of a vocational expert ("VE"). AR at 182. The VE testified that a person with Plaintiff's "age, education, work experience, and residual functional capacity . . . would be able to perform the requirements of representative occupations such as a hand presser . . .; press operator . . .; and egg processor . . . ." AR at 182. Ultimately, ALJ Rolph determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 18, 2012, the date the application was filed." AR at 182 (citing 20 C.F.R. § 416.920(g)).

### III.  Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 ). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff asserts two grounds for remand: (1) the ALJ did not properly consider the opinion evidence from examining psychologist John Owen, Ph.D. and treating psychiatrist Kathryn Fraser, M.D., and (2) the ALJ failed at step five to resolve conflicts between Plaintiff's RFC and information contained in the Dictionary of Occupational Titles ("DOT").

**A.    Substantial evidence supports the weight ALJ Rolph gave to Dr. Owen's and Dr. Fraser's opinions.**

Plaintiff first complains that the ALJ failed to properly consider the opinion evidence from examining psychologist John Owen, Ph.D. and treating psychiatrist Kathryn Fraser, M.D. *Doc. 20* at 4. To determine an applicant's disability, the ALJ must consider the medical opinions in the case record. 20 C.F.R. § 416.927(b). The ALJ decides the weight to give a medical opinion by determining if the opinion is well-supported and is consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The weight given also depends on whether the opinion is that of an examining, non-examining, or treating source. *See* 20 C.F.R. § 416.927(c).

The ALJ must provide "good reason in [the] notice of determination or decision for the weight . . ." he assigned to an opinion. *Watkins*, 350 F.3d at 1300 (citations omitted). "The ALJ's decision [must] be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 305 F.3d at 1300). The court cannot review the ALJ's determination if he does not provide an explanation for rejecting medical evidence. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001); *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (remanding for the ALJ to explain his decision on credibility because the ALJ just listed conclusions and not reasons for those conclusions).

Here, ALJ Rolph gave great weight to the opinions of both John Owen, Ph.D., a consultative examiner, and Kathryn Fraser, M.D., a treating provider. AR at 179, 180.

However, the AJL discounted specific portions of both opinions (*see* AR at 179, 180), which Plaintiff now challenges. The ALJ explained his determination of weight for both opinions, and his conclusions are supported by substantial evidence, such that remand is not required on this ground, as discussed below.

### 1. John Owen, Ph.D., examining medical source

Dr. Owen performed a mental status examination of Plaintiff, including a Mini-Mental State Examination, on February 11, 2013. AR at 485. Dr. Owen diagnosed Plaintiff with chronic Post Traumatic Stress Disorder ("PTSD"), among other issues. AR at 486. After examining her, Dr. Owen opined that Plaintiff has mild dificultly understanding and remembering detailed or complex instructions, but no difficulty understanding or remembering very short and simple instructions. AR at 487. Regarding sustained concentration and task persistence, Dr. Owen opined Plaintiff has moderate to marked difficulty in her ability to carry out instructions, mild to moderate difficulty in her ability to attend and concentrate, moderate to marked difficulty in her ability to persist at tasks, and mild dificultly in her ability to work without supervision. AR at 487. Further, Dr. Owen opined Plaintiff has moderate dificultly in her ability to interact with the public, mild to moderate difficulty in her ability to interact with co-workers, and mild dificultly in her ability to interact with supervisors. AR at 487. Finally, Dr. Owen opined that Plaintiff has mild difficulty in her ability to adapt to changes in the workplace and her ability to use public transportation. AR at 487.

ALJ Rolph determined that Dr. Owen's opinion "is generally consistent with his examination results . . . ." AR at 179. The ALJ therefore gave great weight to Dr. Owen's opinion "with the exception that [Plaintiff] would have moderate to marked difficulty

carrying out instructions and persisting at tasks." AR at 179. The ALJ explained that "Dr. Owen's examination fails to support more than moderate limitations carrying out instructions or persisting at tasks because she "scored 29 of 30 points on a Mini-Mental Status Examination, and it was noted that she was cooperative and she understood simple questions and instructions." AR at 179.

Generally, an ALJ gives more weight to an examining source's opinion, compared to a non-examining source's opinion. 20 C.F.R. 416.927(c)(1). Further, when evaluating an examining source's opinion, the ALJ should consider whether the "medical source presents relevant evidence to support a medical opinion . . . ," *id.* § 416.927(c)(3), whether the opinion is consistent with the record as a whole, *id.* § 416.927(c)(4), whether the medical source is a specialist, *id.* § 416.927(c)(5), and other factors "which tend to support or contradict the medical opinion . . . ," *id.* § 416.927(c)(6).

Plaintiff first asserts that "[t]he ALJ failed to consider that Dr. Owen's opinion for moderate to marked limitations in carrying out instructions and persisting at tasks is related to her PTSD." *Doc. 20* at 6. This argument is not persuasive. Although the ALJ did not specifically mention the term "PTSD," he did note Plaintiff's "trauma because of abuse as a child and the death of her children" and "a history of depression, anxiety, panic attacks and nightmares regarding past trauma." AR at 179.

Plaintiff next challenges the ALJ's finding that Plaintiff had just moderate limitations in her abilities to carry out instructions and persist at tasks rather than the moderate to marked limitations Dr. Owen's opined. Indeed, the ALJ explicitly found that "Dr. Owen's examination fails to support more than moderate limitations carrying out

instructions or persisting at tasks." AR at 179.[3] In doing so, ALJ Rolph noted

inconsistencies between Dr. Owen's opinion and his examination notes. The

inconsistencies include the Mini-Mental Status Examination results and Plaintiff's

cooperation and understanding. AR at 179 (referring to AR at 486). These specific

reasons provide substantial evidence to support the ALJ's determination of weight such

that remand is not required.

Further, in finding only moderate limitations in these areas, the ALJ gave great

weight to Dr. Fraser's medical source statements (AR at 180). In particular, the ALJ

relied on her second medical source statement, in which Dr. Fraser then opined that

Plaintiff's ability to understand, remember and carrying out short, simple instructions are

subject to moderate limitations. AR at 760.[4]

And, contrary to Plaintiff's assertion, the ALJ did incorporate Plaintiff's moderate

limitations in carrying out instructions into the RFC. Plaintiff's RFC limits her to simple,

routine, and repetitive work tasks. AR at 175. This alone is likely not sufficient to

account for the moderate limitations. *See Jaramillo v. Colvin*, 576 F. App'x 870, 876

(10th Cir. 2014) (finding that moderate limitations in carrying out instructions, attending

---

[3] Plaintiff also cites the ALJ's step three findings as an indication that the ALJ found a moderate limitation that was not incorporated into the RFC. *Doc. 20* at 6. During step three of the sequential evaluation, ALJ Rolph found that "[w]ith regard concentration, persistence or pace, the [Plaintiff] has moderate difficulties." AR at 174. However, this step three finding does not apply to the RFC. *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's findings of a moderate limitation in concentration, persistence or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment . . . ."); *see also* SSR 96-8p, 1996 WL 374181, at *4 (July 2, 1996) ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

[4] In an earlier medical source statement, Dr. Fraser opined that Plaintiff had only *slight* limitations in understanding, remembering and carrying out short, simple instructions, while she has moderate limitations in doing the same with detailed instructions. AR at 763 (emphasis added).

and concentrating, and working without supervision were not incorporated into an RFC that just limited the plaintiff to simple, routine, repetitive, and unskilled tasks; "[r]ather, the ALJ was required to express those impairments in 'terms of work-related functions' or '[w]ork-related mental activities.'" (citing SSR 96-8p, 1996 WL 274184, at *6)).

But beyond the limitation to simple, routine, and repetitive tasks, the ALJ also included specific work-related limitations in the RFC, such that Plaintiff

> is fully capable of learning, remembering and performing simple, routine and repetitive tasks, involving simple work instructions, which are performed in a routine, predictable and low stress environment, defined as one in which there is regular pace, few work place changed and no 'over the shoulder' supervision.

AR at 175. And "[w]hile the ALJ did not parrot [Dr. Owen's or Dr. Fraser's] exact descriptions of [Plaintiff's] limitations", he did incorporate Dr. Owen's and Dr. Fraser's overall assessment of Plaintiff's moderate limitations into the RFC. *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016). True, "a moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). But a moderate limitation also does not equate with a complete inability to function in the limited area. *See* AR at 760 (medical source statement defining moderate as "[t]here is moderate limitation in this area, but the individual is still able to function satisfactorily").

Accordingly, the ALJ accounted for Plaintiff's moderate limitation in carrying out instructions and persisting at tasks by including limitations to "simple work instructions," "a routine, predictable and low stress environment" and a "regular pace." AR at 175. Similarly, in *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), the court held that the ALJ did not need to specifically recite the moderate limitations in the RFC since the ALJ "incorporated these limitations by stating how the claimant was limited in the ability

to perform work-related activities." Because the RFC incorporates Plaintiff's moderate limitations in carrying out instructions and persisting at tasks, remand is not required on this ground.

### 2. Kathryn Fraser, M.D., treating medical source

As discussed above, one of Plaintiff's treating medical sources, Dr. Fraser, provided two medical source statements of Plaintiff's ability to do work-related mental activities. AR at 760-65. Although ALJ Rolph gave great weight to both medical source statements, he discounted a portion of each statement. The Plaintiff now challenges the ALJ's findings and asserts that the ALJ failed to explain his rejections. *Doc. 22* at 2.

In the first medical source statement, dated July 10, 2014, Dr. Fraser opined that Plaintiff has moderate limitations in interacting appropriately with the public, supervisors, and co-workers, in responding appropriately to work pressures in a usual work setting, and in responding appropriately to changes in a routine work setting. AR at 764. Dr. Fraser further stated that, "I don't think [Plaintiff is] able to work due to psychiatric and medical factors . . . ." AR at 763.

The ALJ gave great weight to the July 2014 first medical source statement, "[w]ith the exception of Dr. Fraser's opinion that the [Plaintiff] was unable to work . . . ," to which he gave little weight. AR at 180. ALJ Rolph listed specific, legitimate reasons for giving less weight:

> [t]he [Plaintiff's] treatment notes showed depressed and anxious moods but she reported that her medication was helping. Mental status examinations revealed her memory and concentration were adequate . . . . Although Dr. Fraser had a treating relationship with the [Plaintiff], it is not known whether she was familiar with the definition of disability contained in the Social Security Act and regulations. Her opinion that the [Plaintiff] was unable to work is an issue reserved for the Commissioner and is

therefore given little weight. Also, her opinion is not supported by the longitudinal record, or the [Plaintiff's] activities of daily living.

AR at 180 (citing AR at 616, 836).

For claims brought before March 27, 2017,[5] an ALJ must give controlling weight to a treating source's opinion if the ALJ determines the opinion is "well-supported by medically acceptable clinical and laboratory diagnostics techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." *Id.* § 416.927(c)(2). Even if the ALJ determines that a treating source's opinion is not entitled to controlling weight, the ALJ must still give deference to the opinion based on these factors:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[5] As seen at https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html, this rule has been revised:

For claims filed on or after March 27, 2017, we revised our rules about articulating our consideration of medical opinions. First, we will articulate our consideration of medical opinions from all medical sources regardless of whether the medical source is an AMS [acceptable medical source]. Second, we will always discuss the factors of supportability and consistency because those are the most important factors. Generally, we are not required to articulate how we considered the other factors set forth in our rules. However, when we find that two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported and consistent with the record but are not exactly the same, we will articulate how we considered the other most persuasive factors. Third, we added guidance about when articulating our consideration of the other factors is required or discretionary. Fourth, we will discuss how persuasive we find a medical opinion instead of giving a specific weight to it. Finally, we will discuss how we consider all of a medical source's medical opinions together instead of individually.

*Watkins*, 350 F.3d at 1301 (citing 20 C.F.R. § 416.927). To completely reject a treating source's opinion, the ALJ must "give specific, legitimate reasons for doing so." *Id.* (quotations omitted).

Here, while simply stating that Dr. Fraser's opinion is not support by the longitudinal record or Plaintiff's daily activities is not sufficient,[6] the other reasons the ALJ supplied do provide substantial evidence to support his weight determination. As a treating medical source, the ALJ was required to give Dr. Fraser's opinion controlling weight, or at least deference based on the factors listed in 20 C.F.R. § 416.927(c). Though the ALJ does not specifically list the factors, his provided reasons make it clear he considered them. *See Taylor v. Astrue*, 266 F. App'x 771, 777 (10th Cir. 2008) ("[W]e are satisfied that the ALJ relied on the relevant factors even if he did not specifically discuss them.").

First, the ALJ identified internal conflicts between Dr. Fraser's opinion that Plaintiff cannot work and Dr. Fraser's treatment notes, *see* 20 C.F.R § 416.927(c)(3)-(4), including that treatment notes indicate that Plaintiff's medication helps her. *See* AR at 180, 615-16. Further, the ALJ explained that Dr. Fraser's treatment notes indicate that Plaintiff's "[m]ental status examinations revealed her memory and concentration were adequate." *See* AR at 180, 615, 835. Next, the ALJ explained that it is the Commissioner who must decide whether Plaintiff can work or not. AR at 180; *see also* 20 C.F.R § 416.927(c)(6). Issues reserved for the Commissioner include determinations

---

[6] This statement alone is conclusory and does not provide an explanation for rejecting Dr. Fraser's opinion. *See Drapeau,* 255 F.3d at 1214. The Commissioner provided a post hoc explanation for this statement, noting that "[e]lsewhere in [his] decision, the ALJ noted Plaintiff's report that she took care of her daughter's cats and dog, and drove a car and went grocery shopping once a week." *Doc. 21* at 8. This reasoning was not supplied by the ALJ and the Court will not consider reasons given after the ALJ's decision. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

that someone is disabled or unable to work, 20 C.F.R. § 416.927(d)(1), and the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." *Id.* § 416.927(d)(3). Considering these provided reasons, substantial evidence supports the ALJ's determination of weight for Dr. Fraser's first medical source statement.

Dr. Fraser completed a second medical source statement on April 10, 2015. The ALJ gave great weight to this opinion except the finding "that [Plaintiff] had marked limitations responding appropriately to work pressures in a usual work setting and changes in a routine work setting. . . ." AR at 180. The ALJ explained that "[t]he [Plaintiff's] treatment notes showed depressed and anxious moods but she reported that her medication was helping. Mental status examinations revealed her memory and concentration were adequate . . . ." AR at 180 (citing AR at 616, 836). Again, ALJ Rolph provided specific, legitimate reasons for giving less weight to this portion of the opinion. He identified the internal conflicts between Dr. Fraser's opinion on marked limitations and Dr. Fraser's treatment notes, *see* 20 C.F.R § 416.927(c)(3)-(4), including notes stating that Plaintiff's medication helps her and that Paintiff's "[m]ental status examinations revealed her memory and concentration were adequate." *See* AR at 180, 615-16, 835. The ALJ's determination of weight is supported by substantial evidence and does not require a remand.

## B.     Conflicts between Plaintiff's RFC and DOT limitations

Plaintiff next complains that the ALJ failed to resolve conflicts between Plaintiff's RFC and information contained in the DOT. At Step Five, the ALJ can rely on a VE's testimony regarding jobs an applicant can perform, if the VE has properly considered

the applicant's RFC. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

However, before the ALJ can rely on the VE's testimony "as substantial evidence to

support a determination of nondisability, the ALJ must ask the expert how his or her

testimony as to the exertional requirement of identified jobs corresponds with the [DOT],

and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*,

196 F.3d 1084, 1087 (10th Cir. 1999); *see also* SSR 00-4P, 2000 WL 1898704 (Dec. 4,

2000) (stating that the ALJ must "identify and obtain a reasonable explanation for any

conflicts between occupational evidence provided by VEs . . . and information in the

[DOT] . . . .").

VE Thomas Greiner testified at the hearing held before ALJ Rolph. AR at 217.

The ALJ asked the VE what jobs in the national economy a person with Plaintiff's RFC

could perform. AR at 218-21; *see also* AR at 175 (Plaintiff's RFC). The VE testified such

a person could perform the jobs of hand pressor, a light, unskilled position with 50,000

jobs nationally (AR at 220), press operator, a light, unskilled position with 50,000 jobs

nationally (AR at 220), or egg processor, a sedentary, unskilled position with 200,000

jobs nationally (AR at 221). The ALJ then questioned whether the VE's testimony was

consistent with the DOT, to which the VE responded that it was. AR at 223. Further, in

his written decision, the ALJ stated, "Pursuant to SSR 00-4P, I have determined that the

vocational expert's testimony is consistent with the information contained in the

Dictionary of Occupational Titles." AR at 182.

Plaintiff asserts that certain requirements listed in the DOT for the jobs the VE

provided conflict with Plaintiff's RFC. The first asserted conflict regarding a reaching

limitation fails as a ground for remand. The Court feels constrained to find, however,

that remain is required to resolve the second asserted conflict concerning limitations to stand, walk, and sit, as discussed below.

### 1. Limitation to occasional overhead reaching with bilateral upper extremities

Plaintiff first argues there is a conflict between Plaintiff's RFC limitation to occasional overhead reaching and the DOT description of hand pressor, press operator, and egg processor. *Doc. 20* at 8. Plaintiff's RFC limits her to occasional overhead reaching with the bilateral upper extremities. AR at 175. The DOT descriptions of all three jobs identified by the VE include frequent reaching. *See* DOT 363.684-018, 1991 WL 673018 (hand pressor); DOT 363.685-010, 1991 WL 673019 (press operator); DOT 559.687-034, 1991 WL 683787 (egg processor). The Plaintiff contends that the requirement for frequent reaching exceeds Plaintiff's RFC and was neither addressed by the VE, nor resolved by the ALJ. *Doc. 20* at 8-9.

Plaintiff's RFC includes a limitation on only *overhead* reaching. The issue, therefore, is whether the DOT requirement of frequent reaching requires frequent *overhead* reaching. Reaching means extending hands and arms in any direction. *See* SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985); Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. C. In *Segovia v. Astrue*, 226 F. App'x 801 (10th Cir. 2007), the Tenth Circuit upheld an ALJ's determination of nondisability when the DOT description of a job identified by a VE included frequent reaching, but the plaintiff's RFC included a limitation to overhead reaching. 226 F. App'x at 804. The Court explained that the definition of reaching is extending arms in any direction, so "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Id.* Further, the Court

17

reasoned that "[t]he VE was aware of [plaintiff's] limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications . . . ." *Id.*

The same reasoning applies in this case. Plaintiff's RFC limits her ability to reach overhead, while the jobs identified by the VE require frequent reaching, but not specifically frequent overhead reaching. The VE was aware of Plaintiff's limitation in overhead reaching and still testified Plaintiff could perform the jobs he listed. AR at 219. As in *Segovia*, the RFC and the DOT requirements are not in conflict, and the ALJ therefore properly relied on the VE's testimony as substantial evidence to support his determination.

Further, the Court in *Segovia* noted that the DOT descriptions of the jobs identified by the VE (cafeteria attendant and ticket taker) "do not indicate that these jobs predominantly involve overhead reaching rather than other types of reaching." 226 F. App'x at 804. The same can be said about pressor operator and egg processor. *See* DOT 363.685-010 (press operator); DOT 559.687-034 (egg processor).

And while the DOT description of hand pressor may indicate overhead reaching is required, *see* DOT 363.684-018 ("May pin, fold, and hand articles after pressing"), the ALJ's failure to resolve such a potential conflict with Plaintiff's RFC is a harmless error. The Tenth Circuit has held that only one of three jobs identified by a VE needs to have significant numbers in the national economy to support a finding of nondisability at step five. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). And even though the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a significant number," *Trimiar v. Sullivan*, 966 F.2d 1326, 1330

(10th Cir. 1992), it has found 152,000 constitutes a significant number. *See Stoke v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (distinguishing *Trimiar*, which found 650-900 state-wide jobs to not be a significant number); *see also Raymond*, 621 F.3d at 1274 n.2 ("*Trimiar* does *not* hold that . . . a court must engage in a factoral analysis when the number of jobs relevant available is . . . much larger."). Here, even eliminating hand pressor which has 50,000 jobs nationally, 250,000 jobs are still available to Plaintiff, nationally.[7] Clearly, 250,000 is a significant number such that eliminating hand presser due a potential conflict between the DOT and Plaintiff's RFC makes failure to resolve that conflict a harmless error. Remand is therefore not required on this ground.

**2.    Limitation to stand, walk, and sit for six hours in an eight-hour day but only for 45 to 60 minutes at one time**

Plaintiff's RFC limits her to "stand, walk and sit for six hours each in an eight-hour day, for 45 to 60 minutes at one time." AR at 175. The DOT defines the VE-identified jobs of hand pressor and press operator as light work. DOT 363.684-018 (hand presser); DOT 363.685-010 (press operator). Light work "requires standing or walking, off and on, for a total of approximately 6 hours for an 8-hour work day." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). On the other hand, the DOT defines egg processor as sedentary work. DOT 559.687-034. "Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods." DOT App. C, 1991 WL 688702. Further, sedentary jobs require walking and standing only occasionally and "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour

---

[7] Press operator has 50,000 and egg processor has 200,000 jobs nationally. AR at 220, 221.

workday." SSR 83-10, at *5. Beyond that, the DOT is silent on sit/stand alternation options. *See Wahpekeche v. Colvin*, 640 F. App'x. 781, 785-86 (10th Cir. 2016).

The ALJ has a duty to resolve any conflicts between occupational evidence provided by the VE and information in the DOT. SSR 00-4P. The Tenth Circuit has held, however, that there is no apparent conflict between a VE's testimony based on a RFC with sit/stand alternation limitations and the DOT simply because the DOT is silent on sit/stand options. *See Wahpekeche,* 640 F. App'x. at 785-86; *see also Feary v. Berryhill*, Civ. No. 16-767 KK, 2017 U.S. Dist. LEXIS 152967, at *20-22 (D.N.M. Sept. 20, 2017). Therefore, "[t]he ALJ [had] no duty to resolve the alleged 'conflict' before accepting the VE's testimony." *Wahpekeche,* 640 F. App'x. at 786 (10th Cir. 2016).

But, while there may be no apparent conflict with the DOT, SSR 83-12 explains that

> [i]n some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing and walking contemplated for most light work . . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. **In cases of unusual limitations of ability to sit or stand a [VE] should be consulted to clarify the implications for the occupations base.**

SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983) (emphasis added).

Here, the ALJ stated in a long hypothetical to the VE that Plaintiff can stand, walk, and sit for only 45 to 60 minutes at a time. AR at 218-19. Beyond that, the ALJ did not question the VE about how Plaintiff's sit/stand alternation limitation would affect her ability to perform the jobs the VE identified. In contrast, in *Feary,* the Court determined

that "[i]t is clear from the record that the ALJ and [plaintiff's] counsel directly addressed whether the VE considered [plaintiff's] need to alternate between sitting and standing for short periods of time in the jobs she identified." 2017 U.S. Dist. LEXIS 152967, at *21-22; *see also Newburn v. Barnhart*, 62 F. App'x 300, 304 (10th Cir. 2003) (denying plaintiff's contention that the ALJ did not resolve discrepancies between the VE testimony and the DOT when "[t]he ALJ directly addressed the issue of whether the designated jobs could be performed with the specified limitation on hours of standing or walking."); *Apodaca v. Berryhill*, Civ. No. 16-150 KK, 2017 WL 1944188, at *13(D.N.M. May 9, 2017) (finding the ALJ had no duty to resolve an alleged conflict between the VE's testimony and the DOT when the "ALJ directly addressed [the plaintiff's] sit/stand limitation, and . . . the VE considered this limitation in the jobs she identified"). Plaintiff complains not about a conflict because the DOT is silent on sit/stand alternations, but instead points out a potential conflict in SSR 83-12 that the ALJ did not address with the VE. The ALJ did not further consult the VE to clarify the implications of the possible conflict between Plaintiff's RFC and light and sedentary occupational bases. Accordingly, remand is required on this ground.

## V.    Conclusion

The Court finds that this case should be remanded for the ALJ to clarify the implications of Plaintiff's RFC limitation to stand, walk or sit for only 45 to 60 minutes at one time on the jobs the VE has testified that Plaintiff can perform and potentially explore other appropriate jobs given her limitations.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 20*) is **granted** in part. Concurrently herewith, the Court will enter a final order of pursuant to Rule 58 of the Federal Rules of Procedure.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent